Sheehan & Associates, P.C.

United States District Court
Southern District of New York                                    7:20-cv-7491

| | |
|---|---|
| Zaire Parmely, Christopher Lopez, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>            - against -<br><br>The Golub Corporation,<br><br>                      Defendant | Class Action Complaint |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      The Golub Corporation ("defendant") manufactures, distributes, markets, labels and sells vanilla soymilk under its "PICS" brand ("Product").

2.      The Product is available to consumers from defendant's retail stores and website - Price Chopper and Market 32 – and is sold in cartons of 64 OZ (1.89L).

3.      The relevant front label representations include "Vanilla," "Soymilk" and the brand, "PICS."



4.      Consumers purchase soymilk for reasons including their preference for its unique

taste and are allergic to lactose and other ingredients used to make non-dairy "milks."

5.      Soymilk can be flavored with vanilla or chocolate and is sold in sweetened and

unsweetened varieties.

6.      Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[1]

7.      Another study by New Hope Network concludes that "71% of consumers today are

---

[1] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.

avoiding artificial flavors."[2]

8.   Label Insight determined that 76% of consumers avoid products with artificial flavors.[3]

9.   Natural flavors "almost always cost[s] much more than an artificial flavor," so companies and consumers are willing to pay higher prices for the real thing – orange flavor from oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.[4]

10.   Flavoring ingredients, especially for products labeled as vanilla, are typically the most expensive ingredient in a food, and vanilla has reached record high prices in recent years.[5]

11.   Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[6]

12.   According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

13.   Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[7]

14.   Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals,

---

[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[3] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[4] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[5] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.
[6] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[7] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").

heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[8]

15.    In early 2018, in response to rampant misleading labeling of vanilla products, attorneys for the flavor industry urged their peers to truthfully label vanilla foods so that consumers are not misled. *See* John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake") ("There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations.").

16.    The authors explain that relevant regulations "require that food products be labeled accurately so that consumers can determine whether the product is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans.[9]

17.    The authors noted "Adulteration of vanilla flavorings and foods containing them has long been a problem in the U.S. and there continue to be modern examples."

18.    The harms caused by misleading vanilla labeling include economic deception and use of toxic ingredients:

> While the concern at the time was for the "economic" adulteration of vanilla extract with an artificial and less valuable substance—synthetic vanillin—there was also some concern over the use of other adulterants such as coumarin that were thought to pose a possible safety concern. [10]

19.    To prevent consumer deception in the labeling of significant food products, the government established "food standards allow[ing] consumers to trust that a standardized food is

---

[8] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.

[9] Hallagan and Drake.

[10] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018.

what it purports to be because they establish[ed] explicit specifications for the standardized food."[11]

20.     Requirements for vanilla products were "established by the FDA in the 1960s over growing concern of adulteration of vanilla extract with less valuable substances," which alleviated "potential consumer fraud by establishing specific requirements for vanilla extract and other standardized vanilla products."[12]

21.     The vanilla standards were promulgated to end practices which "deprive the consumer of value the product is represented to have, and for which the consumer pays," such as "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure.'"[13]

22.     At the time, the FDA stated that "the purposes of the standards are to assure that the consumer gets what is expected when purchasing vanilla products."[14]

23.     The FDA section chief in charge noted: "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards."[15]

24.     Industry leaders supported vanilla standards to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[16]

25.     The vanilla standards are:

---

[11] *Id*.
[12] *Id*; New York has adopted all federal regulations for food labeling through its Agriculture and Markets Law ("AGM") and accompanying regulations, Title 1, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").
[13] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.
[14] Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.
[15] Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA.
[16] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.

[A] series of individual standards that describe the common or usual name and recipes for eight flavorings: vanilla extract, concentrated vanilla extract, vanilla flavoring, concentrated vanilla flavoring, vanilla powder, vanilla-vanillin extract, vanilla-vanillin flavoring, and vanilla-vanillin powder.

These eight individual standards, at 21 CFR 169.175 – 169.182, are supported by specific requirements for the vanilla beans that may be used to produce vanilla extract and other vanilla products.[17]

26.    Three of these standards "combine vanilla extract with the primary chemically defined flavoring substance in vanilla beans, vanillin."[18]

27.    That Hallagan and Drake felt they needed to publicly identify the misleading labeling of vanilla products to their peers in the flavor and food industry is indicative that many are unaware, misunderstand or ignore vanilla labeling requirements.

28.    To correctly label foods with a characterizing flavor of vanilla, Hallagan and Drake stress two key points:

1.    "The federal standards of identity for vanilla flavorings at 21 CFR Section 169 [and ice cream at 21 CFR Section 135,] and their labeling requirements, take precedence over the general flavor and food labeling regulations at 21 CFR Section 101.22;" and

2.    "The federal standard of identity for vanilla flavorings at 21 CFR Section 169 applies to both the flavorings sold directly to consumers and to food manufacturers [for use in finished food products]."[19]

29.    This confusion in labeling vanilla products is exacerbated because the regulations are not complete on their own but require incorporating external documents of limited availability. Hallagan and Drake ("A variety of resources are available to flavor and food manufacturers and consumers that facilitate an understanding of the proper labeling of vanilla flavorings and vanilla-

---

[17] *Id*.
[18] *Id*.
[19]

flavored foods.").

30.    These resources include:

[A] formal advisory opinion issued by FDA and a variety of regulatory correspondence issued by FDA in response to inquiries from other federal agencies, industry, and the public.

31.    The regulatory correspondence clarifies the relationship between the general flavor regulations and vanilla regulations:

It is important to emphasize that these [at 21 CFR Sections 101.22(i)(1), (2) and (3)] regulations apply only to foods that are not subject to a federal standard of identity.

…

These regulations, found at 21 CFR Section 101.22, apply to all foods except for those subject to a federal standard of identity and this has often resulted in some confusion with the standards governing vanilla flavorings and ice cream that have their own requirements for proper labeling as required in FFDCA Section 403.

Hallagan and Drake (emphasis added).

32.    A significant distinction noted by Hallagan and Drake is that:

The U.S. federal standard of identity for vanilla flavorings does not provide for the designation of any vanilla flavorings as "vanilla with other natural flavors" or "vanilla WONF."[20]

33.    The purpose of not providing for the designation of "Vanilla WONF" was to prevent consumers from being misled by a small amount of vanilla, boosted by artificial vanilla flavors, including vanillin.

34.    According to Hallagan and Drake, "Severe price and supply dislocations have historically coincided with changes in practices related to the composition and labeling of vanilla flavorings."[21]

35.    Where vanilla prices are high, "synthetic vanillin-based flavorings may be used to

---

[20] Labeling Vanilla Flavors.
[21] *Id*.

replace vanilla extract, or to adulterate vanilla extract in violation of the federal standard of identity."

36.   Moreover, "Recent increased emphasis on consumers' desires for foods containing 'natural' food ingredients has resulted in the exploration of vanilla flavoring alternatives that are not derived from vanilla beans."

37.   These two trends – high vanilla prices and an industry focus on providing "natural flavors" – have coincided with a third development – the manufacture of vanillin through a purportedly natural process, such as fermentation.

38.   Many flavor suppliers have mistakenly touted their vanillin products as "natural vanillin" and promoted such flavors as replacements for vanilla extract. *See* Kristine Sherred, [Natural vanillin: Is it the stable flavor source the industry needs?](#) Confectionary News, June 14, 2019 (erroneously stating that the "FDA has certified only Rhovanil as 'natural vanillin' since changing its rules in 2007.") compare with Hallagan and Drake, p. 48 ("FDA has clearly stated that the only vanillin that the agency will regard as 'natural vanillin' is vanillin derived from vanilla beans, which is rarely if ever produced for economic reasons.").

39.   Producers of vanillin made through natural processes promote it as a substitute for "real vanilla extract drop-for-drop."

40.   This "natural vanillin" is then added to real vanilla, and companies erroneously and/or intentionally identify it as "Natural Flavors" to consumers.

41.   Hallagan and Drake state that where a product's front label representation is "Vanilla" without qualification, it "lead[s] consumers to believe that it is flavored with vanilla extract, or another vanilla flavoring derived solely from vanilla beans, as defined in the federal

standard of identity when in fact it is not.[22] *See* 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'"); *see also* 21 U.S.C. §343(g) (requiring ingredients to be listed with "the name of the food specified in the definition and standard"); 21 C.F.R. § 101.4(a)(1) (requiring ingredients "be listed by common or usual name").

42.    Though consumers will expect the Product to be flavored only with vanilla extract, it also contains "Natural Flavors," shown on the ingredient list.



**INGREDIENTS:** ORGANIC SOYMILK (FILTERED WATER, ORGANIC SOYBEANS), CANE SUGAR, CALCIUM CARBONATE, VANILLA EXTRACT, NATURAL FLAVORS, SEA SALT, GELLAN GUM, VITAMIN A PALMITATE, VITAMIN D2, RIBOFLAVIN (VITAMIN B2) AND VITAMIN B12

43.    The representation of the Product as "Vanilla" is misleading because the vanilla taste is provided in significant part by the "Natural Flavors" ingredient.

44.    These "Natural Flavors" are artificial vanilla flavors, which provide much and/or

---

[22] Hallagan and Drake at 54.

most of the Product's vanilla taste, yet this is not disclosed to consumers.

45.     These "Natural Flavors" include and/or typically include maltol, piperonal and vanillin from non-vanilla sources.

46.     Maltol "can improve overall flavor, potentiate sweetness, increase the sensation of creaminess" and has "a mild flavor and sweet caramel-like odor."[23]

47.     Maltol "can help to smooth authentic style vanilla bean flavors" at modest levels.[24]

48.     Piperonal contributes "a sweet vanilla olfactory note as well as a sweet, aromatic, vanilla, and benzaldehyde taste" and imparts "vanilla flavors to food and beverage products."[25]

49.     These "Natural Flavors" consist of compounds which enhance, resemble, simulate, reinforce and extend the "complex array of flavor notes and aromas" of vanilla.[26]

50.     In non-vanilla flavors, a food which gets some flavor from the named, characterizing flavor, i.e., strawberry, and other flavor from natural sources other than the named flavor, i.e., cherries, which enhances, resembles and simulates the named flavor requires the front label to state "With Other Natural Flavor" ("WONF"). *See* 21 C.F.R. § 101.22(i)(1)(iii); *see also* 21 U.S.C. § 343(i) (non-standardized flavors "may be designated as spices, flavorings, and colorings without naming each.").[27]

51.     According to Hallagan and Drake, this is the established FDA position:

> FDA will treat natural flavor compounds that simulate vanilla but are not derived
> from vanilla beans as artificial flavors that simulate the natural characterizing

---

[23] Lisa Kobs, The Sweet Taste of Success – Part Two, Food Ingredients Online, 1998; Maltol, UL Prospector, Bryan W Nash & Sons Ltd.

[24] John Wright, Flavor Bites: Maltol, Perfumer & Flavorist, June 2020.

[25] C. B. Gnadinger, "Piperonal in Vanilla Extract." Industrial & Engineering Chemistry 18.6 (1926): 588-589; Piperonal, Moellhausen S.p.A., UL Prospector.

[26] Vanilla, Taste Foundations, Virginia Dare Company.

[27] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "[T]hat *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

flavor.[28]

52.     They emphasize that vanilla is the one exception to the "WONF" requirement:

The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation. This means that a flavoring mixture of vanilla extract and vanillin produced through a "natural" process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a)(3)) cannot be described as "vanilla extract WONF," "vanilla WONF" or other similar descriptive terms.[29]

53.     In all circumstances, according to FEMA:

[V]anillin is characterizing for vanilla and [that] the addition of vanillin, whether derived from lignin or from other sources, must be clearly declared as in one of the three standardized vanilla flavorings or else the flavoring (most likely to be vanilla extract) is adulterated as would be any food containing it. [30]

54.     These "standardized vanilla flavorings" include vanilla-vanillin extract and vanilla-vanillin flavoring, which combine vanilla and non-vanilla vanillin. *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract"); 21 C.F.R. § 169.181(b) ("Vanilla-vanillin flavoring").

55.     The Product's ingredient list is misleading because even assuming the "Natural Flavors" are all from natural source material, it fails to disclose these ingredients as artificial flavor when paired with vanilla, i.e., vanillin. *See* 21 C.F.R. § 169.181(b) ("Vanilla-vanillin flavoring") (requiring ingredient list to state "'contains vanillin, an artificial flavor (or flavoring).'"); *see also* Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1966 ("The vanilla standard determines vanilla as a standardized product. If other flavorings are added, then the vanilla is no longer a standardized product and should therefore be labeled artificial or imitation.").

56.     The front label is misleading because it does not disclose the presence of the non-

---

[28] Hallagan and Drake, p. 48.
[29] Hallagan and Drake, p. 46.
[30] Hallagan and Drake.

vanilla flavors on the front label, which enhance, resemble and simulate the taste provided by vanilla extract.

57.   By omitting these other flavors from the front label, consumers are not told that the Product's vanilla taste is not provided exclusively, or even predominantly, by vanilla beans.

58.   By designating the ingredient as "Natural Flavors" separately from "Vanilla Extract," consumers are unaware this should be labeled as "artificial flavor," if they are suspicious to "double check" the components of the Product.

59.   Consumers who read the ingredient list will expect the "Natural Flavors" to refer to natural vanilla flavors instead of artificial vanilla flavors and are misled to believe that the Product contains more vanilla than it does.

60.   The Product's front label does not state "contains some vanilla" or "made with a drop of vanilla," but designates the characterizing flavor as "Vanilla" without qualifying terms.

61.   Consumers, including Plaintiffs, expect the Product's vanilla taste to only come from vanilla beans because they are accustomed to labels with terms such as "naturally flavored," "flavored," "artificial flavors" and "with other natural flavors." See 21 C.F.R. § 101.22(i)(1)(i) ("e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'."); 21 C.F.R. § 101.22(i)(1)(ii) and 21 C.F.R. § 101.22(i)(2) ("artificially flavored"); 21 C.F.R. § 101.22(i)(1)(iii) ("with other natural flavor").

62.   These qualifying and descriptive terms tell consumers that a food's characterizing flavor does not exclusively come from its characterizing food ingredient.

63.   Defendant knows consumers will pay more for the Product because the label only states "Vanilla."

64.   Defendant's branding and packaging of the Product is designed to – and does –

deceive, mislead, and defraud plaintiff and consumers.

65.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

66.    The value of the Product that plaintiffs purchased and consumed was materially less than its value as represented by defendant.

67.    Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them.

68.    As a result of the false and misleading labeling, the Product are sold at a premium price, approximately no less than $4.19 per 64 FL OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

69.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

70.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

71.    Plaintiff Zaire Parmely is a citizen of Massachusetts.

72.    Defendant The Golub Corporation, is a Delaware corporation with a principal place of business in Schenectady, Schenectady County, New York and is a citizen of New York.

73.    "Minimal diversity" exists because plaintiff Zaire Parmely and defendant are citizens of different states.

13

74.     Upon information and belief, sales of the Product in Massachusetts and New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

75.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff Lopez to purchase the Product and the misleading representations and/or their recognition as such.

76.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

77.     Plaintiff Zaire Parmely is a citizen of Bellingham, Norfolk County, New York.

78.     Plaintiff Christopher Lopez is a citizen of Middletown, Orange County, New York.

79.     Defendant The Golub Corporation is a Delaware corporation with a principal place of business in Schenectady, New York, Schenectady County and is a citizen of New York.

80.     Defendant operates at least 132 grocery stores, which include the Price Chopper and Market 32 stores, across New York, Connecticut, Massachusetts, Vermont, New Hampshire, Pennsylvania and Rhode Island.

81.     During the relevant statutes of limitations, plaintiffs purchased the Product within their district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

82.     Plaintiff Zaire Parmely purchased the Product on one or more occasions, during the relevant period, at defendant's Price Chopper and/or Market 32 stores, in or around January 2019, at locations including but not necessarily limited to 167 W Main St, Hopkinton, MA 01748.

83.     Plaintiff Christopher Lopez purchased the Product on one or more occasions, during the relevant period, at defendant's Price Chopper and/or Market 32 stores, on or around May 30,

14

2020, at locations including but not necessarily limited to 115 Temple Hill Rd, New Windsor, NY 12553.

84.   Plaintiffs bought the Product at or exceeding the above-referenced prices because they liked the product for its intended use and relied upon the front label claim to expect its taste only came from the identified front label ingredient.

85.   Plaintiffs were deceived by and relied upon the Product's deceptive labeling.

86.   Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

87.   The Product was worth less than what Plaintiffs paid for it and they would not have paid as much absent Defendant's false and misleading statements and omissions.

88.   Plaintiffs intends to, seeks to, and will purchase the Product again when they can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

89.   The class will consist of all purchasers of the Product who reside in Massachusetts and New York during the applicable statutes of limitations.

90.   Plaintiffs seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

91.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

92.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

93.   Plaintiffs are adequate representatives because their interests do not conflict with

other members.

94.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

95.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

96.   Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

97.   Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350,
Massachusetts General Laws Chapter 93A
(Consumer Protection Statutes)

98.   Plaintiffs incorporate by reference all preceding paragraphs.

99.   Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

100.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

101.   Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

102.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

103.   The ingredient list designation of "natural flavors" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

104.   The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

105.   Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

106.   Where applicable, defendant was provided adequate notice of the violation of relevant Massachusetts consumer protection laws.

107.   Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

108.   Plaintiffs incorporate by reference all preceding paragraphs.

109.   Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

110.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

111.   The ingredient list designation of "natural flavors" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

112.   The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

113.   Defendant had a duty to disclose and/or provide non-deceptive marketing of the

Product and knew or should have known same were false or misleading.

114. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

115. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

116. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

117. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

118. Plaintiffs incorporate by reference all preceding paragraphs.

119. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiffs and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

120. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

121. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

122. The ingredient list designation of "natural flavors" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

123.   The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

124.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

125.   Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

126.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

127.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

128.   Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

129.   Plaintiffs incorporate by reference all preceding paragraphs.

130.   Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

131.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

132.   The ingredient list designation of "natural flavors" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does

include vanillin from non-vanilla sources, maltol and piperonal.

133.  The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

134.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

135.  Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

136.  Plaintiffs incorporate by reference all preceding paragraphs.

137.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

   **WHEREFORE**, Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory

    claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and

    experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   September 12, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Law Offices of Peter N. Wasylyk
Peter N. Wasylyk (*PHV* to file)
1307 Chalkstone Ave
Providence RI 02908
Telephone: (401) 831-7730
Fax: (401) 861-6064
*pnwlaw@aol.com*

7:20-cv-7491
United States District Court
Southern District of New York

Zaire Parmely, Christopher Lopez, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

The Golub Corporation,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 12, 2020

/s/ Spencer Sheehan
Spencer Sheehan